**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSE ANDUJAR,** | : | |
| **Petitioner** | : | **Criminal No. 1:05-cr-00422** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |
| | : | |

## MEMORANDUM

### BACKGROUND

On October 26, 2005, Jose Andujar ("Petitioner") was indicted for conspiracy to manufacture, distribute, and possess with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 846. (Doc. No. 1.) With George Matangos serving as counsel, on August 3, 2006, Petitioner signed a plea agreement and pleaded guilty to the offense charged in the indictment. (Doc. Nos. 94, 104.)

In compliance with the plea agreement, Petitioner gave substantial assistance to law enforcement, and, during sentencing, the government moved for a downward departure under U.S.S.G. § 5K1.1. (Doc. No. 181.) The Court granted the three-level sentence reduction, resulting in a guideline range of 78 to 97 months imprisonment. (Doc. No. 199.) On August 20, 2007, Petitioner was sentenced to 78 months imprisonment with three years of supervised release. (Doc. No. 228.)

On August 27, 2008, Petitioner filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255. (Doc. No. 231.) The initial petition stated the grounds for relief as "whether Mr. Jose Andujar should be awarded an additional downward departure" on the basis of

"extraordinary remorse," "extraordinary family situation," "pre-trial conditions," and "multiple factors." (Doc. No. 231.) Although the brief in support of the petition contained a section of law on the ineffective assistance of counsel, neither the brief nor the initial petition alleged that defense counsel was ineffective for failing to raise Petitioner's remorse and family situation or the presentencing conditions of confinement at sentencing. (Doc. Nos. 231, 233.) Reading the petition as one simply requesting the Court to resentence Petitioner in consideration of his remorse, his family situation, the presentencing conditions, and a combination of those factors, the Court denied the motion for failure to raise a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)). (Doc. No. 241.)

On November 3, 2008, Petitioner filed a motion for reconsideration. (Doc. No. 242.) In that motion, Petitioner clarified his argument by explicitly alleging that defense counsel was ineffective for failing to raise the issues mentioned in the § 2255 petition at the sentencing proceedings. (Doc. No. 242.) In light of Petitioner's clarification, the appearance in the initial petition of case law on the issue of ineffective assistance of counsel, and the leniency due a *pro se* petitioner, the Court granted the motion for reconsideration and directed the government to respond to the § 2255 petition. (Doc. No. 243.) The motion is now ripe before the Court for disposition.

**DISCUSSION**

In Petitioner's motion for post-conviction relief, he argues that his sentence should be reduced on the basis of "exceptional remorse," "extraordinary family situation," "pre-trial conditions," and "multiple factors." (Doc. No. 233.) Because it is unclear from his motion

whether he argues solely that the failure of the Court to downward depart for the four above-mentioned reasons resulted in a fundamental miscarriage of justice, or whether he argues defense counsel was ineffective for failing to raise those issues, the Court will consider both possibilities. See Estelle v. Gamble, 429 U.S. 97, 106 91976) (requiring *pro se* complaints to be leniently construed). The government argues that the motion should be dismissed as untimely or, alternatively, for failure to allege a fundamental miscarriage of justice because Petitioner has not adequately alleged ineffective assistance of counsel.

For the foregoing reasons, the Court finds that the "motions and files and records of the case show conclusively that the movant is not entitled to relief," and therefore the Court will deny Petitioner's motion without holding an evidentiary hearing. United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992).

**1. Timeliness**

The government first argues that the motion is untimely since it was received by the Court on August 27, 2008, more than one year after Petitioner's August 20, 2007 sentencing. While there is a one-year statute of limitations period for filing § 2255 motions, the Supreme Court has held that a *pro se* prisoner's motion for writ of habeas corpus is deemed to have been filed on the date the motion is deposited in the prison's outgoing mailbox or delivered to prison authorities for forwarding. 28 U.S.C. § 2255(f)(1); Houston v. Lack, 487 U.S. 266 (1988).

In this case, the motion was notarized on August 18, 2008, and Petitioner avers that he placed his motion in the mailbox that same day. Further, the postal service date stamp on the

envelope appears to read August 20, 2008.[1] Accordingly, the Court finds the motion is timely.

**2. Procedural Default**

Andujar's initial petition contests the Court's application of the sentencing guidelines by alleging that his sentence may have been lower had the Court adequately considered his exceptional remorse, extraordinary family situation, and the deplorable pre-sentencing conditions both individually and in combination. Petitioner did not appeal the Court's alleged failure to adequately consider these issues.

A challenge to the application of the sentencing guidelines must rise to the level of a "substantial miscarriage of justice" to be actionable in a § 2255 petition. United States v. Essig, 10 F.3d 968 (3d Cir. 1993). The Third Circuit Court of Appeals has interpreted this standard to mean that "a defendant who fails to object to errors at sentencing and subsequently attempts to raise them on direct appeal must demonstrate 'cause and prejudice' for that failure." Id., at 979 ("[W]e hold Frady's cause and prejudice standard applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed. . . . [T]he standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim."). Thus, reading Petitioner's claim as an objection to the application of the sentencing guidelines not caused by ineffective assistance of counsel, he must demonstrate cause and prejudice to find relief under § 2255.

Andujar has failed to meet the cause and prejudice standard because he has failed to allege any reason for his failure to raise exceptional remorse, family situation, presentencing

[1]The record no longer contains the original mailing envelope, and the scanned copy of the envelope is nearly illegible, however, a date stamp of "Aug 20" appears barely discernable by the Court. (Doc. No. 233 at 20.)

conditions, or "combination of factors" as a basis for downward departure either at the initial sentencing or on direct appeal. Therefore, to the extent Petitioner claims a procedural error in the application of the sentencing guidelines, that argument will be denied.

**3. Ineffective Assistance of Counsel**

Although not clear from Petitioner's initial motion for post-conviction relief, Petitioner asserts in his motion for reconsideration and reply brief that he is actually alleging ineffective assistance of counsel. Petitioner's reply brief alleges that, despite Petitioner's requests, defense counsel failed to argue for a downward departure on the basis of Petitioner's exceptional remorse, extraordinary family responsibility, harsh pretrial conditions, or a combination of those factors. (Doc. No. 245 at 4-5.) Assuming Petitioner appropriately alleged a claim for ineffective assistance of counsel, the Court nonetheless finds that the motion must be denied because Petitioner's allegations do not meet the Strickland test.

A prisoner alleging an ineffective assistance of counsel claim must show that his counsel's performance was 1) "deficient," which is to say that it "fell below an objective standard of reasonableness," and 2) that the defendant was prejudiced by his counsel's deficient performance. Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). There is a "strong presumption" that counsel acted reasonably, and "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id., at 694.

**a. Consideration of Exceptional Remorse and Family Situation**

Petitioner first argues that defense counsel should have sought a downward departure on the basis of his extraordinary family condition and exceptional remorse. Though defense counsel did not expressly move for a downward departure on the basis of these issues, it is clear that Petitioner's remorse and family situation were raised at sentencing[2] and neither issue constituted an "exceptional circumstance" warranting a downward departure. Petitioner provides no additional allegations in his § 2255 petition that would raise either issue to the level of exceptionality required for a downward departure. Thus, although defense counsel did not move for a downward departure, such a motion would have been frivolous and does not evidence a failure to meet professional standards. See Johnston v. Love, 940 F. Supp. 738, 776 (E.D. Pa. 1996) ("Counsel cannot be faulted for failing to pursue meritless or futile objections.")

A downward departure for family ties and situation is a "discouraged" basis for

---

[2]Defense counsel raised both Petitioner's family situation and exceptional remorse in his opening statement. Defense counsel stated: "Mr. Andujar has not been sitting in prison lamenting about the future of the sentencing. In fact, what he's been lamenting is the pain that he's caused his wife and daughter;" he also emphasized that Petitioner sought to atone by "mak[ing] some serious changes . . . both in helping his brother-in-law and his family and in trying to help people . . . with financial difficulties." (Doc. No. 228 at 3-4.) Defense counsel then highlighted the financial troubles incurred by Petitioner's family as a result of his incarceration: "[H]is wife had to sell the home that they had hoped to raise their young daughter in because she could not financially obligate herself to the payments without Jose's help." (Id.) Lastly, defense counsel reiterated Petitioner's remorse and family situation before Petitioner testified on his own behalf: "He's standing here to take punishment . . . he only laments the unfortunate circumstances he's visited upon his wife and child." (Id. at 6.)

Moreover, the Court indicated its consideration of Petitioner's family situation in fashioning his sentence: "Not many people at this stage have intact families and young children, faithful and loyal spouses who are willing to stick by them. There's no reason to think that Mr. Andujar cannot survive a period of incarceration and pick up where he left off, go back, raise his daughter, be with his wife. It's my hope that a sentence at the lower end of the guideline range would enable him to do just that." (Id. at 12.)

departure, and therefore is only acceptable in exceptional circumstances. United States v. Sweeting, 213 F.3d 95, 99-100 (3d Cir. 2000) ("[T]he Sentencing Commission has classified the existence of family ties and responsibilities as a 'discouraged' basis for departure. . . . At the risk of stating the obvious, then, a downward departure based on family ties and responsibilities should be the exception rather than the rule."). Petitioner alleges that, due to his absence from the family, his wife can no longer afford the mortgage payment and his daughter has begun "crying and disturbing or creating problems among her peers." (Doc. No. 233 at 12.) Unfortunately, behavioral problems in children and financial difficulties are far from exceptional circumstances that result from having a family member imprisoned; neither is it abnormal that a conviction results in the removal of the primary breadwinner from a family. Petitioner has provided no evidence to support the argument that his family situation is exceptional enough to warrant downward departure. See, e.g., Sweeting, 213 F.3d at 101-02 (finding it not sufficiently atypical and an abuse of discretion for a court to award a downward departure for family ties to a single mother of five children, one of whom "has a substantial neurological deficit in the form of Tourette's Syndrome" and requires physical rehabilitative assistance from the mother).

Petitioner has also failed to allege any reason his remorse is exceptional. Petitioner refers only to the fact he genuinely regrets his decision and wrote a letter of apology to the Court, which he read at sentencing. (Doc. Nos. 233 at 10; 242 at 5.) Neither of these expressions of remorse rises to the level of exceptionality required to even plausibly support a downward departure on the basis of remorse. This basis for departure is even less plausible in light of the three-level sentence reduction already awarded to Petitioner for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

Because Petitioner's allegations of remorse and family situation could not have supported a downward departure, defense counsel did not act unreasonably in failing to move for a downward departure on those bases, and Petitioner was not prejudiced by such decision.

**b. Consideration of Pre-Sentencing Conditions**

Petitioner next claims that his sentence should be vacated or modified because his counsel failed to seek a downward departure for "harsh and bad" presentencing confinement at Dauphin County Prison. Petitioner alleges that the conditions at Dauphin County Prison were significantly worse than those at the federal facilities in that he found "massive amounts of cockroaches under the bed and occasionally . . . in food trays. Trays [were] pushed frequently on dirty floors . . . [and] mice frequently [were] found in personal property, especially food brought from commissary that [was] secured." (Doc. No. 233 at 15.) He avers that inmates were "regularly locked down in their cells for 21 to 22 hours per day" and only allowed to shower two days a week. (Id.) Although defense counsel did not seek a reduction based on unduly harsh conditions of confinement, the Court finds that counsel's decision was reasonable and also that the failure did not prejudice Petitioner.

It is not settled law in this Circuit that exceptionally bad conditions of pretrial or presentencing confinement are a basis for a downward departure. In United States v. Stevens, 223 F.3d 239, 248 n.9 (3d Cir. 2000), the Third Circuit Court of Appeals specifically stated that "we do not decide the question of whether confinement conditions constitute a permissible basis for downward departure." To the extent downward departures based on pretrial or presentencing conditions of confinement can serve as a basis for downward departure, such departures would be, at best, "highly infrequent." See Koon v. United States, 518 U.S. 81, 93-96 (1996)

(recognizing that factors not mentioned in the Sentencing Guidelines can serve as a basis for downward departure but that such a departures should be "highly infrequent"). The only reported cases granting downward departures on the basis of deplorable conditions of incarceration have done so when the defendant experienced violence during pretrial confinement.[3] Due to the uncertainty of the state of the law and the low probability that such a motion would have been beneficial to Petitioner, the Court cannot say that defense counsel was unreasonable for failing to raise it.

Further, Petitioner has not been prejudiced because there is not a reasonable probability the Court would have awarded a downward departure based on Petitioner's allegations. Taking all facts alleged as true and in the light most favorable to Petitioner, United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005), Petitioner experienced rodent infestation, "cockroaches under the bed and occasionally . . . in food trays," showers limited to two days per week, cold and unhygienic food, occasionally dirty laundry, twenty inmates sharing one toilet, and 21-22 hour per day "lockdown."[4] (Doc. No. 233 at 15, 17.) While these conditions are certainly not

---

[3]See, e.g., United States v. Rodriguez, 213 F. Supp. 2d 1298, 1302 (M.D. Ala. 2002) (allowing downward departure in sentencing due to rape by prison guard during presentencing confinement but expressly limiting holding to the extreme facts of that case); United States v. Francis, 129 F. Supp. 2d 612, 619 (S.D.N.Y. 2001) (granting downward departure for conditions of pre-sentencing confinement where petitioner was a victim of knife slashing, frequent fights, and significant fear of gang threats); United States v. Ogembe, 41 F. Supp. 2d 567 (E.D. Pa. 1999) (declining downward departure for three months' incarceration with "no running water, infestation of rodents, and overcrowding"); Sutton, 973 F. Supp. 488, 495 (D.N.J. 1997) (declining to take "extraordinary measure" of granting downward departure for pretrial conditions where confinement was not unusually long and the conditions were not "atypical as compared with jails in other jurisdictions").

[4] Petitioner has attached two letters from other inmates contesting the conditions at Dauphin County jail, which allege precisely the same allegations made by Petitioner. (Doc. No. 233-2 at 6, 14-15.)

commendable, Petitioner did not allege threats of violence or physical harm, nor did he allege that the conditions he experienced were qualitatively or quantitatively worse than those experienced by other defendants. See Rodriguez, 213 F. Supp. 2d at 1312 (finding that the extreme occurrence of rape by prison guard warranted downward departure); Francis, 129 F. Supp. 2d at 617-19 (finding that threats, attempted stabbing, and extreme weight loss in the wake of rampant gang activity warranted downward departure); United States v. Pacheco, 67 F. Supp. 2d 495, 498 (E.D. Pa. 1999) (requiring conditions to be worse than those of other inmates at a facility to be considered for downward departure); Sutton, 973 F. Supp. at 494-95 (declining to take "highly infrequent and extraordinary measure of departing downward based on conditions of pretrial confinement" where the defendant failed to produce evidence indicating that the conditions of the defendant's confinement were worse than those in other jails). Downward departures based on deplorable confinement conditions are not intended to effect prison reform, but rather to account for individually deplorable circumstances. Sutton, 973 F. Supp. at 495 ("Using downward departures to foment prison administrative reform is awkward and far removed from the aim of the Sentencing Guidelines."). Thus, absent allegations of particular harms that made Petitioner's confinement atypically deplorable, any motion for downward departure on the basis of presentencing conditions did not have a reasonable probability of success.

Accordingly, it was neither unreasonable nor prejudicial that defense counsel did not move for a downward departure on the basis of deplorable presentencing conditions.

    **c.    Combination of Factors**

Lastly, Petitioner contends that his sentence should be modified because defense counsel

failed to move for a downward departure on the basis that the combination of factors–his family situation, exceptional remorse, and harsh presentencing conditions–would have warranted a downward departure. This claim fails because there is nothing Petitioner has alleged which, even if aggregated, rises to the level of "extraordinary" such that it would have been unreasonable for counsel to fail to raise the issue or that it would have impacted Petitioner's sentence.

The Sentencing Guidelines authorizes a Court to grant a downward departure in "extremely rare" cases where no single factor suggests an adequate reason for a departure, but a combination of factors does. See U.S.S.G. § 5K2.0; United States v. Evans, 49 F.3d 109, 114 (3d Cir. 1995). As stated above, Petitioner's family situation and remorse do not even plausibly support a motion for downward departure. Therefore, even when taken into consideration together and with the allegation of unduly harsh presentencing confinement, Petitioner's allegations still fall short of rising to the level required to provide a basis for downward departure. Because Petitioner's circumstances do not plausibly support a downward departure on the exceptional basis of "combination of factors," defense counsel did not act unreasonably in declining to move for a downward departure on this basis, and Petitioner was not prejudiced by defense counsel's decision.

**4. Certificate of Appealability**

Defendant must make "a substantial showing of the denial of a constitutional right" for the issuance of a certificate of appealability. 28 U.S.C. § 2253(c)(2). As stated above, defense counsel's actions did not fall below the standard of reasonableness, and Petitioner was not prejudiced by defense counsel's decisions. Accordingly, reasonable jurists would agree that Petitioner has not made a showing of the denial of a constitutional right. There exists no basis for

a certificate of appealability with respect to this issue.

**CONCLUSION**

Petitioner argues for a modification or vacation of sentence on the basis of the failure of the Court to consider, and the failure of his counsel to move for downward departure based on, exceptional remorse, extraordinary family situation, deplorable confinement conditions, and a combination of those factors at the sentencing hearing. For the aforementioned reasons, the Court finds that defense counsel's actions did not fall below an objective standard of professionalism, and they did not prejudice Petitioner. The Court also finds that there was not a fundamental miscarriage of justice in the application of the sentencing guidelines to Petitioner. Accordingly, Petitioner's motion to vacate, modify, set aside sentence will be denied.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSE ANDUJAR,** | : | |
| **Petitioner** | : | **Criminal No. 1:05-cr-00422** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |
| | : | |

**ORDER**

**AND NOW**, this 16th day of July 2009, upon consideration of Petitioner's motion to vacate, set aside or correct sentence (Doc. No. 231), **IT IS HEREBY ORDERED** that the motion is **denied.** There exists no basis for a certificate of appealability.

S/ Yvette Kane
Chief Judge Yvette Kane
United States District Court
Middle District of Pennsylvania